UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| JAMES ANTHONY GRAY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 17-069-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| TONY HAMPTON, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

*** *** *** ***

This matter is pending for consideration of the defendants' motions to dismiss. [Record Nos. 17, 18] For the reasons that follow, the motions will be granted, in part, and the remaining claims will be stayed pending resolution of the relevant criminal proceedings in state court.

### I.  Background

James and Vivian Gray were found deceased in their home in Scott County, Kentucky in April 2007. [Record No. 1, p. 10 ¶ 8] Their son Anthony Gray ("Gray"), the plaintiff in this action, with whom they had a turbulent relationship, quickly became a suspect in their deaths. *Id.* at p. 10 ¶ 10. Approximately six months following James and Vivian's deaths, Scott County Sheriff Deputies Roger Persley and David Willis asked Gray to come in for an interview. *Id.* at p. 11 ¶ 14. The investigators questioned Gray for approximately two hours concerning his parents' signatures on one or more wills. *Id.* Gray took a short break and returned to the interview room to find grisly photographs of the crime scene. Officers had also placed a slice of pecan pie and a Pepsi on the table. *Id.* at p. 11 ¶ 17. According to Gray, this was done to "recreate the crime scene environment." *Id.*

At this point, Persley and Willis turned off all recording devices and interrogated Gray for over five hours. *Id.* at p. 11 ¶ 19. They employed various forms of "trickery and deceit," which included producing "a forged or altered lab report of DNA and blood evidence allegedly linking Gray to the murders;" telling Gray that his car had been captured on surveillance video heading to his parents' home on the night in question; showing him a photograph of a car and telling him that it was, in fact, his car; telling Gray that a neighbor identified him at his parents' home on the night in question; and telling him that a judge had called the sheriff and threated Gray with the death penalty if he did not confess to the murders immediately. *Id.* at p. 12 ¶ 21. He was also shown photographs of his parents' bodies and told that their blood was found on his clothing and steering wheel, and that gunshot residue was found on his clothing. *Id.* at p. 12 ¶ 22. Gray alleges that the officers knew all along that all of the assertions were untrue. *Id.*

The officers eventually turned the cameras or other recording devices back on. *Id.* at p. 12 ¶ 23. Gray told the officers that they "made [him] realize what [he] had done" and that the evidence they had provided "helped [him] to . . . I still don't believe I done it but you know, with the evidence I must have." *Id.* at p. 13 ¶ 25. Gray was immediately arrested, taken into custody, and indicted. *Id.* at p. 13 ¶ 26.

Gray sought to suppress his confession prior to his first trial. *Id.* at p. ¶ 33. The state trial court denied suppression and a mistrial resulted. *Id.* at p. 16 ¶ 40. Gray was tried again and was convicted of two counts of murder and of tampering with physical evidence in 2013. *Id.* at p. 16 ¶ 42. He was sentenced to 45 years' imprisonment. Gray appealed.

In February 2016, the Kentucky Supreme Court reversed Gray's convictions, finding that "the hours of manipulation and fabricated evidence" amounted to coercion and that the

confession should have been suppressed. *Gray v. Com.*, 480 S.W.3d 253, 261 (Ky. 2016). The court stated that "considerable evidence" pointed to Gray's guilt, but it was particularly troubled by officers' use of false reports linking DNA evidence to Gray. *Id.* At the time Gray filed the instant Complaint, he was scheduled to be tried on the charges for a third time. [Record No. 1, p. 17 ¶ 50]

## II.     Standard of Review

When evaluating a motion to dismiss under Rule 12(b)(6), the court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). While a complaint need not contain detailed factual allegations, a plaintiff must provide more than mere labels and conclusions, and "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. While plaintiffs are not required to plead facts showing that the defendant is likely to be responsible for the harm alleged, plaintiffs must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

## III.     Discussion

### A.     Denial of a Fair Trial, Conspiracy, and Failure to Train under 42 U.S.C. § 1983

Gray alleges that the defendants' conduct deprived him of a fair trial in violation of his due process rights (Count IV) and that his coerced confession resulted in a false conviction (Count VII). He complains, *inter alia*, that the defendants coerced his confession and

knowingly used it against him at trial; arrested and prosecuted him without probable cause; and withheld and destroyed evidence during the investigation and trials. [Record No. 1, p. 26 § 84] Likewise, Gray claims that the defendants conspired to obstruct justice to achieve his wrongful indictment, conviction, and unlawful imprisonment (Count VI), *id.* at p. 31 ¶ 99, and that they failed to supervise or train their officers (Count IX).

A plaintiff's § 1983 claims accrue when the plaintiff has a complete and present cause of action. *See Wallace v. Kato*, 549 U.S. 384, 394 (2007); *Heck v. Humphrey*, 512 U.S. 477, 487-88, n.8 (1994). In Kentucky, the applicable statute of limitations for § 1983 actions is one year. *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990). Gray's interrogation occurred in late 2007 and the defendants' "threats" regarding the death penalty persisted through 2011, just prior to his first trial. [Record No. 1, p. 13 ¶ 28] Viewed in isolation, these events would no longer be actionable, as they are outside the statute of limitations. *See Wallace*, 549 U.S. at 349. However, Gray claims that the defendants conspired and used a false confession and fabricated evidence against him during his trials to obtain a conviction. This may have resulted in new constitutional claims that arose during his second trial, but, once he was convicted, he was barred from bringing a § 1983 action challenging the validity of his conviction or sentence based on the Supreme Court's holding in *Heck v. Humphrey*, 512 U.S. at 477.

The Sixth Circuit has held that challenges to a criminal investigation which led to a conviction necessarily challenge the validity of the conviction and, therefore, fall within the framework of *Heck*. *Morris v. City of Detroit*, 211 F. App'x 409, 411 (6th Cir. 2006). Gray argues that his conviction was reversed and, therefore, he is now free to bring § 1983 challenges. Because Gray is scheduled to be retried, however, his § 1983 claims inherently

involve issues that are still before the state court in the criminal action. When a plaintiff files a claim related to rulings likely to be made in a pending criminal trial, it is common practice to stay the civil action until the criminal case or the likelihood of a criminal case has concluded. *Wallace v. Kato*, 549 U.S. 384, 394 (2007) (citing *Heck*, 512 U.S. at 487-88, n.8). If the plaintiff is ultimately convicted, *Heck* will require dismissal. *Id.* Otherwise, the civil action may proceed, absent some other bar to the litigation. *Id.* (citations omitted).

*Younger* abstention is based on the principle that the states have a special interest in enforcing their own laws in their own courts. *Younger v. Harris*, 401 U.S. 37, 44 (1971). In applying this doctrine, the Court must consider whether a state proceeding is pending at the time the federal action in initiated; whether an important state interest exists; and whether the state forum will provide the plaintiff with an adequate opportunity to raise his constitutional claims. *Nimer v. Litchfield Twp. Bd. of Trustees*, 707 F.3d 699, 701 (6th Cir. 2013). The first prong is satisfied, as Gray was being held in state custody and was scheduled to be retried at the time he filed his federal complaint. Further, it is well-established that state courts have a strong interest in enforcing their criminal laws. *See Loch v. Watkins*, 337 F.3d 574, 579 (6th Cir. 2003). Finally, there is no suggestion that Gray cannot present his constitutional claims in state court. *See Sovereign News Co. v. Falke*, 448 F.Supp. 306, 340 (N.D. Ohio 1977) (stating that a pending state prosecution provides the federal plaintiff with a "concrete opportunity" to vindicate his constitutional rights). The Kentucky Supreme Court already ruled that the use of Gray's coerced confession violated the Due Process Clause of the Fourteenth Amendment and that the confession may not be used at Gray's upcoming trial. Accordingly, the plaintiff's § 1983 claims seeking money damages based on the denial of the right to a fair trial, conspiracy, and failure to supervise/train will be stayed pending resolution

of the state criminal proceedings. *See Carroll v. City of Mt. Clemens*, 139 F.3d 1072, 1075-76 (6th Cir. 1998) (explaining why stay is preferable to dismissal).

### B. Eighth Amendment Claim under 42 U.S.C. § 1983

Gray raises claims under the Eighth Amendment to the U.S. Constitution in Counts II and V of his Complaint. Specifically, he claims that he was subject to "verbal abuse and harassment" including "the threat that he would be put to death if he did not confess to the crimes he was charged with." [Record No. 1, p. 22 ¶ 65] Gray's claim alleging cruel and unusual punishment under the Eighth Amendment does not implicate *Heck* and can be addressed at this stage.

The claim appears to be based primarily on Gray's allegation that, during his interrogation, he was threatened with the death penalty. *Id.* at p. 12 ¶ 21. However, the Eighth Amendment concerns punishment and has no application to events that occurred before Gray was convicted. *See Ingraham v. Wright*, 430 U.S. 651, 671-72 n. 40 (1977); *Galas v. McKee*, 801 F.2d 200, 205 (6th Cir. 1986). Gray also claims to have been subjected to "cruel and unusual punishment," including "excruciating mental, emotional, and physical deprivations, suffering and harms far greater than those suffered or sustained by ordinary criminal suspects." [Record No. 1, p. 29 ¶ 91] However, he has not alleged any *facts* which describe the nature of the alleged punishment or when it occurred. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) (plaintiff must allege facts showing that he has been subjected to specific deprivations denying him "the minimal civilized measure of life's necessities"); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987). Accordingly, Gray's claims under the Eighth Amendment will be dismissed.

### C. Malicious Prosecution under 42 U.S.C. § 1983

Gray asserts malicious prosecution claims against all defendants under 42 U.S.C. § 1983.[1] This tort, which addresses wrongful institution of legal process, requires plaintiffs to establish the following elements: (1) a criminal prosecution was initiated against the plaintiff and the defendant made, influenced, or participated in the decision to prosecute; (2) there was a lack of probable cause for the criminal prosecution; (3) the plaintiff suffered a deprivation of liberty as a result of the legal proceeding; and (4) the criminal proceeding was resolved in the plaintiff's favor. *Sykes v. Anderson*, 625 F.3d 294, 309 (6th Cir. 2010).

Resolution in the plaintiff's favor means "successful termination of the state criminal proceedings." *See White v. Rockafellow*, 181 F.3d 106 (6th Cir. 1999) (table) (plaintiff's malicious prosecution claim did not accrue until prosecutor filed notice of *nolle prosequi*). Although the Kentucky Supreme Court reversed Gray's conviction, the proceedings have not been finally resolved in his favor. Gray reports that he is currently in state custody facing retrial for the same charges. Accordingly, a claim for malicious prosecution has not accrued and this count will be stayed pending the outcome of the pending criminal charges.[2]

---

[1] Gray also alleges abuse of process under § 1983, but the Sixth Circuit does not recognize such a cause of action and this claim (Count II) will be dismissed. *Moore v. WesBanco Bank, Inc.*, 612 F. App'x 816, 823 (6th Cir. 2015). Additionally, "Wrongful Imprisonment" (Count III) appears to duplicate the claim for malicious prosecution and will be dismissed without prejudice for the reasons stated above. To the extent Gray attempts to state a claim for wrongful or false arrest under § 1983, the statute of limitations began to accrue on the date of his arrest and any such claim is time-barred. *Wallace v. Kato*, 549 U.S. 384, 394 (2007); *McCune v. City of Grand Rapids*, 842 F.2d 903, 906 (6th Cir. 1988).

[2] The parties agree, in the alternative, to stay the malicious prosecution claim until after Gray's retrial. [Record Nos. 19, p. 31; 17-1, p. 20 n.4]

### D. State Law Claims

Gray alleges claims under Kentucky law for abuse of process (Count II); wrongful imprisonment (Count III); "invasion of privacy and reputation" (Count VIII); malicious prosecution (Count IX); negligence and Kentucky's "anti-sweating" statute (Count X). Each of these claims involves the same core allegations—that the defendants wrongfully investigated, arrested, and prosecuted the plaintiff for the murder of his parents. Federal courts are instructed not to interfere with pending state criminal proceedings except in the rare situation where an injunction is necessary to prevent "great and immediate" irreparable injury. *Younger*, 401 U.S. at 45-46. Here, there is a strong likelihood that proceeding with litigation of these claims would infringe upon activity in the state criminal case, which was instituted first. Accordingly, the Court will stay proceedings regarding the state law claims until Gray's criminal proceedings have been resolved.

### IV. Conclusion

Based on the foregoing analysis, it is hereby

**ORDERED** as follows:

1. The motion to dismiss filed by Defendants Hampton, Persley, Willis, and Hammons [Record No. 17] is **GRANTED**, in part.

2. The motion to dismiss filed by Defendants Shaw and Eardley [Record No. 18] is **GRANTED**, in part.

3. Plaintiff Anthony Gray's Eighth Amendment claim under 42 U.S.C. § 1983 is **DISMISSED**, with prejudice.

4. Plaintiff Anthony Gray's claims for malicious prosecution and wrongful imprisonment under 42 U.S.C. § 1983 are **DISMISSED**, without prejudice.

5. For the reasons explained in this Memorandum Opinion and Order, the Court finds that it is appropriate to abstain from the remaining claims pursuant to *Younger v. Harris*, 401 U.S. 37 (1971). Accordingly, the matter shall be **STAYED**.

6. The parties shall **FILE** a joint status report within **10** days of the conclusion of Gray's criminal trial in state court or any other resolution of the criminal proceeding.

This 9th day of November, 2017.

Signed By:
*Danny C. Reeves* DCR
United States District Judge